1  BAUTE & TIDUS LLP
   Mark D. Baute (State Bar No. 127329)
2  mbaute@bautelaw.com
   Patrick M. Maloney (State Bar No. 197844)
3  pmaloney@bautelaw.com
   Henry H. Gonzalez (State Bar No. 208419)
4  hgonzalez@bautelaw.com
   777 South Figueroa Street, Suite 4900
5  Los Angeles, California 90017
   Telephone: (213) 630-5000
6  Facsimile: (213) 683-1225

7  Attorneys for Plaintiff
   SYMANTEC CORPORATION
8

9         UNITED STATES DISTRICT COURT FOR THE
             SOUTHERN DISTRICT OF CALIFORNIA
10

11 SYMANTEC CORPORATION,              )  Case No.    07 CV 1402 JLS (BLM)
                                      )  [Complaint filed August 1, 2007]
12         Plaintiff,                 )
                                      )  **MEMORANDUM OF**
13                                    )  **CONTENTIONS OF FACT AND**
                                      )  **LAW**
14    vs.                             )
                                      )  **Pursuant to Local Rule 16.1.f.2**
15 GLOBE 2000 CORP., a California      )
   Corporation; NGA PHAN, an individual; )  **FINAL PRETRIAL**
16 and DOES 1-10, inclusive,          )  **CONFERENCE:**
                                      )
17                                    )
         Defendants.                  )  Date: December 5, 2008
18                                    )  Time: 10:30 a.m.
                                      )
19 _____)  Judge Janis L. Sammartino
                                         Courtroom 6 – Third Floor
20

21

22

23

24

25

26

27

28

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1   Pursuant to Civil Local Rule 16.1.f.2, Plaintiff Symantec Corporation
2   ("Symantec") hereby submits its Memorandum of Contentions of Fact and Law.

3   ## I. **FACTUAL CONTENTIONS**

4   Symantec has sued the defendants Nga Phan ("Defendant") and Globe 2000
5   Corp. for wrongfully purchasing and distributing counterfeit Norton and Symantec
6   software.  Globe 2000 Corp. has filed for bankruptcy.

7   Symantec's ten claims for relief are for (1) trademark infringement under the
8   Lanham Act, (2) false designation of origin under the Lanham Act, (3) copyright
9   infringement, (4) fraud, (5) trafficking in counterfeit labels, documentation and/or
10  packaging (18 U.S.C. § 2318), (6) statutory unfair competition, (7) common law
11  unfair competition, (8) state law false advertising, (9) intentional interference with
12  prospective economic advantage, and (10) negligent interference with prospective
13  economic advantage.

14  **A.**    **The Central Factual Allegations Are Substantially Similar For**
15       **Each Of The Ten Claims For Relief.**

16  The central allegations in this lawsuit relate to the unauthorized distribution
17  and sale of counterfeit software by the defendants.  Symantec manufactures and
18  distributes software for personal computers, including Norton SystemWorks, Norton
19  Internet Security, Norton AntiVirus, and pcAnywhere.  As part of its anti-piracy
20  program, Symantec determined that the Defendant and Globe 2000 Corp. were
21  highly likely to be selling counterfeit Norton and Symantec software.  During 2004
22  and 2005, Symantec acquired fourteen counterfeit CDs from the defendants, via test
23  purchases and via customer submissions of suspected counterfeit products.
24  Symantec sent a cease and desist letter to the defendants in November 2005.
25  Despite receipt of this letter, the Defendants continued to sell Symantec products.
26  Symantec continued to receive counterfeit and unauthorized Symantec CDs from the
27  Defendants during 2006 and 2007.
28  In all, Symantec now has in evidence approximately fourteen counterfeit

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1   and/or unauthorized CDs acquired from the Defendants.  The software titles include
2   Norton SystemWorks, Norton Internet Security, Symantec AntiVirus, and Norton
3   AntiVirus.  The counterfeit CDs bear the following nine (9) registered trademarks
4   owned by Symantec: Symantec, the Symantec Logo, Norton AntiVirus, LiveUpdate,
5   Norton SystemWorks, Goback, CleanSweep, Norton Ghost and Norton Utilities.
6   The CDs include four (4) copyrighted works.

7       In addition, Symantec has several dozen invoices showing that the
8   Defendants purchased a substantial amount of purported Symantec software from
9   Vertex International, a known distributor of counterfeit products whom Symantec
10   has previously sued and is currently enforcing a judgment of over $1,000,000 for
11   willful trademark and copyright infringement.

12      Symantec has been in contact with Federal agents (Immigration and Customs
13   Enforcement), who have indicated the defendants in this matter were moving large
14   quantities of counterfeit products.

15      The defendants' liability for trademark and copyright infringement is beyond
16   dispute.  The counterfeit and unauthorized CDs obtained from consumers and via
17   test purchases were sold in white envelopes ("sleeves") with counterfeit key code
18   labels affixed to the back of each sleeve, with no retail box, and with no owners'
19   manual.  The CDs also have counterfeit codes and labels molded and/or printed on
20   them.

21      Symantec brought this action against the defendants for trademark
22   infringement, copyright infringement, fraud, unfair business practices, false
23   advertising, trafficking in counterfeit labels, documentation and/or packaging, and
24   interference with prospective economic advantage.

25      The primary issue is likely to be the extent of Symantec's damages.  The
26   defendants sold counterfeit copies of Symantec software under circumstances that
27   would put any reasonable person on notice that the disks were illegitimate, and did
28   not stop their infringing activities despite Symantec's November 2005 written notice

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1  that they were producing and selling counterfeit products.

2  Symantec has received nothing of substance from defendants on purchase and
3  sales information.  The corporate defendant filed for bankruptcy the day after the
4  parties submitted a joint motion request that the Court continue the first Mandatory
5  Settlement Conference in this case purportedly to allow the defendants to respond to
6  Symantec's discovery.  Ms. Phan's discovery responses were not any better as she
7  merely directed inquiries to the corporation.

8  **B.    Symantec's Business, Products and Intellectual Property.**

9  Symantec designs, manufactures, publishes and distributes software for
10  personal computers, including Norton AntiVirus, Norton Internet Security and
11  Norton SystemWorks 2005.

12  Each Norton SystemWorks product consists of a suite of several software
13  programs, including:  Norton AntiVirus; Norton Utilities; Norton CleanSweep;
14  GoBack; and Norton Ghost.  Norton SystemWorks is  also distributed with the
15  "LiveUpdate" feature.

16  Symantec owns the trademarks and copyrights for Norton AntiVirus, Norton
17  Internet Security and Norton SystemWorks.

18  The following nine (9) trademarks are listed on the face of each Norton
19  SystemWorks 2005 CD:

20  a.  "Symantec", registration number 1683688.

21  b.  "Norton SystemWorks", registration number 2488092.

22  c.  "Norton AntiVirus", registration number 1758084.

23  d.  "Ghost", registration number 1107115.

24  e.  "Norton Utilities", registration number 1508960.

25  f.  "CleanSweep", registration number 1936913.

26  g.  "LiveUpdate", registration number 2243057.

27  I.  "GoBack", registration number 2271088.

28  k.  Symantec Logo, registration number 3009890.

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

Norton SystemWorks 2005 includes the following four (4) copyrighted
software programs:

a.      Norton AntiVirus, registration number TX 4-908-397.

b.      Norton Ghost, registration number TX 4-715-124.

c.      Norton Utilities, registration number TX 3-772-061.

d.      CleanSweep, registration number TX 4-426-292.

The following three (3) trademarks are listed on the face of each Norton
Internet Security 2004 and Norton Internet Security 2005 CD:

a.  "Symantec", registration number 1683688.

b.  "LiveUpdate", registration number 2243057.

c.  Symantec Logo, registration number 3009890.

Norton Internet Security 2004 and Norton Internet Security 2005 include the
following copyrighted software program:

a.      Norton Internet Security, registration number TX 6-501-447.

The following four (4) trademarks are listed on the face of each Norton
AntiVirus 2004 CD:

a.  "Symantec", registration number 1683688.

b.  "Norton AntiVirus", registration number 1758084.

c.  "LiveUpdate", registration number 2243057.

d.  Symantec Logo, registration number 3009890.

Norton AntiVirus 2004 includes the following copyrighted software
programs:

a.      Norton AntiVirus, registration number TX 4-908-397.

From and after the date of registration of each of its trademarks, Symantec has used
the trademarks continuously to identify its products, including NSW and other
software.  Symantec markets, distributes and sells software under the "Symantec,"
"Norton SystemWorks" and other trademarks in California, throughout the United
States, and in foreign countries.

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1   Symantec does not engage in direct sales of its software or its component
2   parts to end-user consumers.  Instead, the software is sold to authorized distributors
3   who, in turn, resell the product that eventually ends up in the hands of end-users.
4   Symantec also does not directly sell its product to customers through the Internet.
5   Instead, when customers interested in purchasing its products visit the Symantec
6   website and inquire about purchasing software, they are redirected to a site owned,
7   operated, and maintained by a third party, namely, Digital River.  Symantec licenses
8   to Digital River the use of its name and the right to sell its software to end-users
9   over the Internet.

10   Symantec contracts with a third party, DisCopy Labs ("DCL"), for the
11   manufacture of NSW software within the United States.   As a part of this process,
12   Symantec supplies the digital art work for silkscreen manufacturing, and the
13   computer program master to DCL, who then ensures that the CDs and associated
14   components are reproduced according to Symantec's standards.  DCL puts the CDs
15   and associated components along with manuals in packaging designed by Symantec,
16   and shrink wraps the box.  DCL receives product shipping instructions from
17   Symantec, then palletizes and ships the products to distributors.

18   Any NSW software disk manufactured for sale in the United States by an
19   entity other than DCL and those entities authorized by DCL is not an authorized
20   product of Symantec.  Symantec does not control or set the resale price of the NSW
21   software.  Symantec sells its software to authorized distributors.  Thus, advertised
22   prices of software below Symantec's minimum prices to distributors indicate that
23   the software offered for sale may be counterfeit.

24   **C.   Nga Phan is Personally Liable for Infringement of Symantec's**
25   **Trademarks and Copyrights.**

26   Defendant Nga Phan's personal liability is inescapable under *Transgo, Inc. v.*
27   *Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985) (corporate
28   officer or director generally liable for all torts he authorizes or directs, or in which

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1  he participates, even though acting as agent of corporation and not on his own). Ms.

2  Phan supervised, directed and/or ratified all of the corporate defendant's acts.

3  Symantec alerted the defendants to the likelihood that they were selling counterfeit

4  Norton and Symantec software in November 2005.  The defendants ignored that

5  written notice and continued to sell Norton and Symantec products at suspiciously

6  low prices.  Ms. Phan, as one of three members of the closely held family business,

7  instigated, authorized, and/or ratified the infringing activities of Globe 2000:

8      Q.    Can you tell me what [your job duties] were, please?

9      A.    I am responsible for putting stuff up for sale.

10      Q.    Any other responsibilities?

11      A.    I sometimes answer e-mails.

12                                                * * * *

13      Q.    Okay.  So you were solely responsible for listing the products
             for sale?

14

15      A.    Yes, that's correct.

16          MR. DILLICK: She said she was responsible for listing
    products.  She didn't say she was responsible for listing all products.

17          MR. GONZALEZ: I asked the question and she said "yes."  If
    you want to clarify –

18

19          THE WITNESS: I'm sorry, it was fast.

20  BY MR. GONZALEZ:

21      Q.    Let me ask you this: Was there anyone else at GLOBE 2000 that
             was responsible for listing product on the website?

22      A.    No.

23      Q.    You were the only one?

24      A.    I don't remember.

25  Nga Phan Depo. at 16:9-16 and 31:21 - 32:11.  Moreover, Ms. Phan was personally

26  involved in obvious infringing activity, providing customers with key codes that did

27  not match their product and trying to change her answer after becoming aware of the

28  implications of what she had said:

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

| | | |
|---|---|---|
| 1 | Q. | You said that when customers wrote e-mails in complaining about – I guess not complaining, but raising issues about the key code, you would try to replace it; is that correct? |
| 2 | | |
| 3 | A. | Yes. |
| 4 | Q. | What do you mean by try to replace it? |
| 5 | A. | By giving them a new set of key codes from the unused one. |
| 6 | Q. | You wouldn't actually ship the customers new CDs, you would just give them new key codes? |
| 7 | | |
| 8 | A. | Most of the time we required them to send it back, and then se would send them a new one. |
| 9 | Q. | But other times you wouldn't, you would just give them new key codes? |
| 10 | | |
| 11 | A. | No.  I think – almost all the time, yeah, that we would need the CD back just to make sure that – what they're complaining or what they're raising issues is true, that there's something wrong with the CD. |
| 12 | | |

13  Phan Depo. at 55:1-19.[1]  Ms. Phan testified that she was personally involved in both

14  the selling and advertising of purported Symantec products.  Personal liability is

15  mandated against her under *Transgo*.

16    **D.    Defendants' Willful Infringement Justifies a Large Statutory**

17        **Damages Award.**

18    Defendants have infringed the following trademarks owned by Symantec:

---

[1]   As one means of limiting the spread of counterfeit products, commencing with its 2004 products, Symantec required purchasers to contact Symantec to activate the product shortly after installing it.  The activation process requires that the purchaser provide a product key code or the product will have limited functionality.  The product activation requirement is designed to prevent unauthorized installation of a given CD on multiple computers.  However, in order to allow for legitimate re-installation on the same computer or on a replacement computer, Symantec allows a given product activation code to be used more than once.  Symantec made the business decision to allow activation codes to be used more than once in part to avoid consumer frustration and increased costs associated with dealing with problems associated with such legitimate re-installations by purchasers of genuine Symantec software.

It appears that counterfeiters figured this out, for some product activation codes were being used numerous times.  Symantec determined that such multiple uses of the same activation codes were caused by consumers registering counterfeit CDs using forgeries of legitimate product activation codes.

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1  Symantec, the Symantec Logo, Norton AntiVirus, LiveUpdate, Norton

2  SystemWorks, Goback, CleanSweep, Norton Ghost and Norton Utilities.  In

3  addition to the software code on each disc, each disc also includes one or more

4  manual and/or other instructional materials, each of which is intellectual property

5  owned by Symantec.  Symantec may seek the maximum statutory damages for

6  infringing those four trademarks and all of the copyrighted material, as well as for

7  trafficking in counterfeit labels, documentation and/or packaging.

8           **E.     Symantec is Entitled to Injunctive Relief.**

9           These defendants trafficked in counterfeit Symantec products but refused to

10  stop selling those counterfeit products until after Symantec sued them.  Ms. Phan

11  denies receiving Symantec's written notices, despite clear evidence they were

12  delivered to her, and her acknowledgment that such correspondence would be

13  delivered to an email account that would be checked by her personally.  Ms. Phan

14  needs to be enjoined or she is very likely to continue infringing Symantec's

15  trademarks and copyrights.

16           **F.     Symantec's Damages.**

17           Defendants have infringed the following trademarks owned by Symantec:

18  Symantec, the Symantec Logo, Norton AntiVirus, LiveUpdate, Norton

19  SystemWorks, Goback, CleanSweep, Norton Ghost and Norton Utilities.  The

20  defendants have infringed a like number of Symantec's copyrighted works.  In

21  addition to the software code on each disc, each disc also includes one or more

22  manual and/or other instructional materials, each of which is intellectual property

23  owned by Symantec.   Symantec may seek the maximum statutory damages for

24  infringing those four trademarks and all of the copyrighted material, as well as for

25  trafficking in counterfeit labels, documentation and/or packaging.

26           Actual damages for trafficking in counterfeit labels, documentation and/or

27  packaging, 18 U.S.C. § 2318, are calculated as the full retail price multiplied by the

28  number of units sold by the Defendants.  Statutory damages under 18 U.S.C. § 2318

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1  range from a minimum of $2,500 per unit sold up to $25,000 per unit sold.

2

3  ## II. CLAIMS AND DEFENSES.

4  **A.**   **Symantec's Claims, Elements Required to Establish Symantec's Claims,**

5  **and Key Evidence in Support of Each Claim.**

6  **(1)   Plaintiff's Claim Number 1 (Trademark Infringement):**

7  Symantec contends that the Defendant infringed the following trademarks

8  owned by Symantec: Symantec, the Symantec Logo, Norton AntiVirus, LiveUpdate,

9  Norton SystemWorks, Goback, CleanSweep, Norton Ghost and Norton Utilities.

10 Symantec contends that Defendants' infringement was willful.

11  **(A)   The Elements Required to Establish Symantec's Claim**

12  **Number 1:**

13  **(i)   Non-willful infringement**: Symantec owns the

14 trademarks in question.  The Defendant distributed the trademarks in question

15 without authorization by Symantec.  Consumers were confused and misled as to the

16 true origin of Defendant's allegedly counterfeit products.  Symantec suffered

17 damages as a result of the Defendant's actions.  *Comedy III Productions, Inc. v.*

18 *New Line Cinema*, 200 F.3d 593, 594 (9th Cir. 2000).

19  **(ii)   Willful infringement**:  The Defendant knew or, with

20 reasonable inquiry would have known, the products she was selling were

21 counterfeit, not genuine Symantec products.  *Tiffany (NJ) Inc. v. Luban*, 282 F.

22 Supp. 2d 123, 124 (S.D.N.Y. 2003).

23  **(B)   In Brief, the Key Evidence Symantec Relies on to Prove**

24  **Claim Number 1:**

25  Symantec will introduce testimony and documentary evidence that Symantec

26 owns the trademarks in issue and that the Defendant distributed and sold counterfeit

27 CDs.  Symantec will introduce testimony and evidence that the Defendant

28 distributed those counterfeit products directly to the public; several consumers

1  submitted counterfeit CDs purchased from the Defendant.  The defendant also sold

2  counterfeit Symantec product directly to Symantec's outside investigators

3  conducting test purchases.  Symantec will also introduce evidence that the

4  Defendant knew she was violating Symantec's intellectual property rights in the

5  form of testimony from Nga Phan admitting that she received complaints from her

6  customers, that she never contacted Symantec, and that she could not tell whether

7  the CDs were genuine, yet she never contacted Symantec to find out.  Symantec will

8  also introduce evidence and testimony to establish that the Defendant continued

9  selling Symantec product after she was warned by Symantec that she was selling

10 counterfeit product.

11         **(2)    Plaintiff's Claim Number 2 (False Designation of Origin):**

12         Symantec contends that the Defendants are liable for false designation of

13 origin under Lanham Act § 43(a), 15 U.S.C. § 1125(a), as to each of the products

14 protected by the following trademarks owned by Symantec: Symantec, the

15 Symantec Logo, Norton AntiVirus, LiveUpdate, Norton SystemWorks, Goback,

16 CleanSweep, Norton Ghost and Norton Utilities

17             **(A)    The Elements Required to Establish Symantec's Claim**

18                     **Number 2:**

19         The Defendant's activities in selling and offering for sale software bearing

20 Symantec's names, logos and trademarks constitute false designation of origin, false

21 description, and a false representation that the products offered for sale by the

22 Defendant originates from or is sponsored, approved or authorized by Symantec.

23 The Defendant's activities in selling and offering for sale software bearing

24 Symantec's names, logos and trademarks created a likelihood of confusion as to the

25 source or origin of the products sold and offered for sale.  The Defendant's actions

26 damaged Symantec.  MCCARTHY ON TRADEMARKS, § 27:14; *Two Pesos, Inc. v.*

27 *Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

28

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

**(B)** **In Brief, the Key Evidence Symantec Relies on to Prove Claim Number 2:**

The key evidence is similar to the evidence for claim Number 1.  Symantec will introduce testimony and documentary evidence that Symantec owns the trademarks in issue and that the Defendant sold counterfeit CDs.  Symantec will introduce testimony and evidence that the Defendant distributed those counterfeit products directly to the public; several consumers submitted counterfeit CDs purchased from the Defendant.  The Defendant also sold counterfeit Symantec product directly to Symantec's outside investigators conducting test purchases.  Symantec will also introduce evidence that the Defendant knew she was violating Symantec's intellectual property rights in the form of testimony from Nga Phan admitting that she received complaints from her customers, that she never contacted Symantec, and that she could not tell whether the CDs were genuine, yet she never contacted Symantec to find out.  Symantec will also introduce evidence and testimony  to establish that the Defendant continued selling Symantec products after she was warned by Symantec that she was selling counterfeit product.

**(3)** **Plaintiff's Claim Number 3 (Copyright Infringement):**

Symantec contends that the Defendant infringed Symantec's copyrights in Norton SystemWorks, Norton AntiVirus, Norton Internet Security and Ghost.  Symantec contends the Defendant's infringement was willful.

**(A)** **The Elements Required to Establish Symantec's Claim Number 3:**

**(i)** **Non-willful infringement**:  Plaintiff owns the rights to Norton SystemWorks, Norton AntiVirus, Norton Internet Security and Ghost.  The Defendants distributed and offered for sale unauthorized copies of Symantec's software products.  Symantec suffered damages as a result of the Defendant's infringing actions. *Parfums Givenchy, Inc. v. Drug Emporium, Inc.*, 38 F.3d 477, 479 (9th Cir. 1994).

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

**(ii)** <u>**Willful infringement**</u>:  The Defendant's infringement was willful in that she knew or with reasonable inquiry would have known the software she sold was counterfeit.  Symantec suffered damages as a result of the Defendant's actions.

**(B)** <u>**In Brief, the Key Evidence Symantec Relies on to Prove**</u>
<u>**Claim Number 3:**</u>

The key evidence is similar to the evidence for claim Number 1.  Symantec will introduce testimony and documentary evidence that Symantec owns the copyrights in issue and that the Defendant sold numerous counterfeit CDs containing such copyrights.  Symantec will introduce testimony and evidence that the Defendant distributed those counterfeit products directly to the public; several consumers submitted counterfeit CDs purchased from the Defendant.  The Defendant also sold counterfeit Symantec product directly to Symantec's outside investigators conducting test purchases.  Symantec will also introduce evidence that the Defendant knew she was violating Symantec's intellectual property rights in the form of testimony from Nga Phan admitting that she received complaints from her customers, that she never contacted Symantec, and that she could not tell whether the CDs were genuine, yet she never contacted Symantec to find out.  Symantec will also introduce evidence and testimony  to establish that the Defendant continued selling Symantec products after she was warned by Symantec that she was selling counterfeit product.

**(4)** <u>**Symantec's Claim Number 4 (Fraud):**</u>

Symantec contends the Defendants fraudulently purchased and sold counterfeit products bearing the following trademarked and/or copyrighted products: Norton AntiVirus, LiveUpdate, Norton SystemWorks, Goback, CleanSweep, Norton Ghost, pcAnywhere, and WinFax PRO.  Symantec contends the Defendants purchased and sold such products, knowing they were counterfeit or with reckless disregard for whether they were genuine.  Symantec contends the Defendants

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1  intended that ultimate users of Defendants' products would use the counterfeit

2  software, register it, activate it using the counterfeit registration codes provided by

3  the Defendants, seek technical assistance from Symantec, and eventually seek to

4  upgrade their counterfeit copies as if they were genuine Symantec products.

5  Symantec reasonably relied on customers' reporting of registration codes as

6  genuine, authorized by Symantec for use by purchasers of genuine Symantec

7  products.  In fact, the Defendants' customers never paid anything to Symantec and,

8  through the defendants' fraud, obtained valuable goods, services and other

9  consideration from Symantec, which Symantec would not have provided had it

10  known of the defendants' fraud.

11          **(A)    The Elements Required to Establish Symantec's Claim**

12                  **Number 4:**

13      The essential elements of a claim of fraud by an intentional misrepresentation

14  are:

15      1)      The defendant must have made a representation as to a past or

16              existing material fact;

17      2)      The representation must have been false;

18      3)      The defendant must have known that the representation was

19              false when made or must have made the representation

20              recklessly without knowing whether it was true or false;

21      4)      The defendant must have made the representation with an intent

22              to defraud the plaintiff, that is, he or she must have made the

23              representation for the purpose of inducing the plaintiff to rely

24              upon it and to act or to refrain from acting in reliance thereon;

25      5)      The plaintiff must have been unaware of the falsity of the

26              representation; must have acted in reliance upon the truth of the

27              representation and must have been justified in relying upon the

28              representation;

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1        6)    And, finally, as a result of the reliance upon the truth of the

2              representation, the plaintiff must have sustained damage.

3    CACI Instruction No. 1900.

4        The essential elements of a claim of fraud by concealment are:

5        1)    The defendant must have concealed or suppressed a material

6              fact;

7        2)    The defendant must have been under a duty to disclose the fact

8              to the plaintiff;

9        3)    The defendant must have intentionally concealed or suppressed

10             the fact with the intent to defraud the plaintiff;

11       4)    The plaintiff must have been unaware of the fact and would not

12             have acted as he or she did if he or she had known of the

13             concealed or suppressed fact;

14       5)    And, finally, the concealment or suppression of the fact caused

15             the plaintiff to sustain damage.

16   CACI Instruction No. 1901.

17       **(B)    In Brief, the Key Evidence Symantec Relies on to Prove**

18             **Claim Number 4:**

19       The key evidence is similar to the evidence for claim Number 1.  Symantec

20   will introduce testimony and documentary evidence that Symantec owns the

21   trademarks in issue and that the Defendant distributed and sold counterfeit CDs.

22   Symantec will introduce testimony and evidence that the Defendant distributed

23   those counterfeit products directly to the public; several consumers submitted

24   counterfeit CDs purchased from the Defendant.  The defendant also sold counterfeit

25   Symantec product directly to Symantec's outside investigators conducting test

26   purchases.  Symantec will also introduce evidence that the Defendant knew she was

27   violating Symantec's intellectual property rights in the form of testimony from Nga

28   Phan admitting that she received complaints from her customers, that she never

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1  contacted Symantec, and that she could not tell whether the CDs were genuine, yet

2  he never contacted Symantec to find out.  Symantec will also introduce evidence

3  and testimony, to establish that the Defendant continued selling Symantec product

4  after she was warned by Symantec that she was selling counterfeit product.

5  **(5)   Plaintiff's Claim Number 5:**

6  Trafficking in Counterfeit Labels, Documentation And/Or Packaging

7  (18 U.S.C. § 2318).

8  **(A)   The Elements Required to Establish Symantec's Claim**

9  **Number 5:**

10  The Defendant actually sold, transferred or disposed of Symantec products, in

11  interstate commerce, for purposes of commercial advantage or private financial gain,

12  or obtained control of or possessed such software with the intent to sell, transfer, or

13  dispose of it for commercial advantage or private financial gain; and that such

14  Symantec-branded software had a label affixed to, enclosing, or accompanying, or

15  designed to be affixed to, enclose, or accompany it, which appeared to be genuine

16  but was not, or that such Symantec-branded software was accompanied by a

17  certificate, licensing document, registration card, or similar labeling component that

18  was not authorized by Symantec.  Symantec suffered damages as a result of each of

19  the Defendant's actions.  18 U.S.C. § 2318.

20  **(B)   In Brief, the Key Evidence Symantec Relies on to Prove**

21  **Claim Number 5:**

22  The key evidence is similar to the evidence for claim Number 1.  Symantec

23  will introduce testimony and documentary evidence that Symantec owns the

24  products in issue and that the Defendant sold numerous counterfeit CDs containing

25  such purported products.  Symantec will introduce testimony and evidence that the

26  Defendant distributed those counterfeit products directly to the public; several

27  consumers submitted counterfeit CDs purchased from the Defendant.  The

28  Defendant also sold counterfeit Symantec product directly to Symantec's outside

1  investigators conducting test purchases.  Symantec will also introduce evidence that
2  the Defendant knew she was violating Symantec's intellectual property rights in the
3  form of testimony from Nga Phan admitting that she received complaints from her
4  customers, that she never contacted Symantec, and that she could not tell whether
5  the CDs were genuine, yet she never contacted Symantec to find out.  Symantec will
6  also introduce evidence and testimony  to establish that the Defendant continued
7  selling Symantec products after she was warned by Symantec that she was selling
8  counterfeit product.

9       **(6)  Plaintiff's Claim Number 6:**

10       Unfair competition under California Business and Professions Code ("B&P")
11  § 17200.

12            **(A)  The Elements Required to Establish Symantec's Claim**
13                  **Number 6:**

14       The Defendant engaged in a practice of deceiving consumers as to the nature
15  and origin of the counterfeit Symantec software she purchased, distributed and sold.
16  The Defendant's actions occurred in California or injured California residents.
17  Symantec suffered damages as a result of each of the Defendant's unfair actions.
18  California Business and Professions Code § 17200.

19            **(B)  In Brief, the Key Evidence Symantec Relies on to Prove**
20                  **Claim Number 6:**

21       Symantec will introduce testimony and documentary evidence that Symantec
22  owns the trademarks and copyrights in issue and that the Defendant distributed and
23  sold numerous counterfeit CDs recovered from various sources around the United
24  States.  Symantec will introduce testimony and documentary evidence that the
25  Defendant admitted that she purchased and sold numerous counterfeit CDs.
26  Symantec will introduce testimony, physical and documentary evidence proving that
27  the CDs the Defendant purchased, marketed, distributed and sold are all
28  counterfeits.  Symantec will introduce documents establishing the Defendant

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1   purchased, marketed, distributed and sold thousands of counterfeit Symantec CDs.

2   Each of the counterfeit Symantec CDs purchased and/or sold by the Defendant

3   includes Symantec's trademarks and copyrighted materials owned by Symantec.

4   Each of the counterfeit Symantec CDs purchased and/or sold by the Defendant

5   bears a label affixed to it purporting to be, and appearing to be, a genuine Symantec

6   label but which in fact is counterfeit.  Each of the counterfeit Symantec CDs bears

7   artwork purporting to identify it as a Symantec product.  Symantec will introduce

8   testimony and documentary evidence that the Defendant distributed and sold the

9   counterfeit Symantec products in California and that Symantec is headquartered in

10  California.

11          **(7)    Plaintiff's Claim Number 7:**

12          Unfair competition under California common law.

13                  **(A)    The Elements Required to Establish Symantec's Claim**

14                          **Number 7:**

15          The Defendant pirated Symantec's software and "palmed it off" as if it were

16  actually produced by or authorized by Symantec, deceiving consumers as to the

17  nature and origin of the counterfeit software she sold.  The Defendant's actions

18  occurred in California or injured California residents.  Symantec suffered damages

19  as a result of each of the Defendant's unfair actions.  *Self-Directed Placement Corp.*

20  *v. Central Data Corp.*, 908 F.2d 462, 467 (9th Cir. 1990); *Bank of the West v.*

21  *Superior Court*, 2 Cal. 4th 1254, 1263, 10 Cal. Rptr. 2d 538 (1992); *Lamothe v.*

22  *Atlantic Recording Corp.*, 847 F.2d 1404, 1406 (9th Cir. 1998).

23                  **(B)    In Brief, the Key Evidence Symantec Relies on to Prove**

24                          **Claim Number 7:**

25          The key evidence is similar to the evidence for claim Number 5.  Symantec

26  will introduce testimony and documentary evidence that Symantec owns the

27  trademarks and copyrights in issue and that the Defendant distributed and sold

28  numerous counterfeit CDs recovered from various sources around the United States.

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1   Symantec will introduce testimony and documentary evidence that the Defendant
2   admitted that she purchased and sold numerous counterfeit CDs.  Symantec will
3   introduce testimony, physical and documentary evidence proving that the CDs the
4   Defendant purchased, marketed, distributed and sold are all counterfeits.  Symantec
5   will introduce documents establishing the Defendant purchased, marketed,
6   distributed and sold thousands of counterfeit Symantec CDs.  Each of the
7   counterfeit Symantec CDs purchased and/or sold by the Defendant includes
8   Symantec's trademarks and copyrighted materials owned by Symantec.  Each of the
9   counterfeit Symantec CDs purchased and/or sold by the Defendant bears a label
10  affixed to it purporting to be, and appearing to be, a genuine Symantec label but
11  which in fact is counterfeit.  Each of the counterfeit Symantec CDs bears artwork
12  purporting to identify it as a Symantec product.  Symantec will introduce testimony
13  and documentary evidence that the Defendant distributed and sold the counterfeit
14  Symantec products in California and that Symantec is headquartered in California.

### (8)   Plaintiff's Claim Number 8:

16  State law false advertising – Calif. Bus. & Prof. Code §§ 17500, 17200.

### (A)   The Elements Required to Establish Symantec's Claim Number 8:

19  The Defendant pirated Symantec's software and "palmed it off" as if it were
20  actually produced by or authorized by Symantec, deceiving consumers as to the
21  nature and origin of the counterfeit software she sold.  The Defendant made false or
22  misleading statements that she knew, or by the exercise of reasonable care, should
23  have known were false or misleading, to consumers in California.  Symantec
24  suffered damages as a result of each of the Defendant's unfair actions.  *Committee*
25  *on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 197 Cal.
26  Rptr. 783 (1983).

27  To state a cause of action under these statutes, it is necessary only to show
28  that members of the public are likely to be deceived.  Actual deception or confusion

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1  caused by misleading statements is not required.  *Day v. AT&T Corp.*, 63 Cal. App.

2  4th 325, 332, 74 Cal. Rptr. 2d 55 (1998).

3      **(B)    In Brief, the Key Evidence Symantec Relies on to Prove**

4              **Claim Number 8:**

5      The key evidence is similar to the evidence for claim Number 6.  Symantec

6  will introduce testimony and documentary evidence that Symantec owns the

7  trademarks and copyrights in issue and that the Defendant distributed and sold

8  numerous counterfeit CDs recovered from various sources around the United States.

9  Symantec will introduce testimony and documentary evidence that the Defendant

10  admitted that she purchased and sold numerous counterfeit CDs.  Symantec will

11  introduce testimony, physical and documentary evidence proving that the CDs the

12  Defendant purchased, marketed, distributed and sold are all counterfeits.  Symantec

13  will introduce documents establishing the Defendant purchased, marketed,

14  distributed and sold thousands of counterfeit Symantec CDs.  Each of the

15  counterfeit Symantec CDs purchased and/or sold by the Defendant includes

16  Symantec's trademarks and copyrighted materials owned by Symantec.  Each of the

17  counterfeit Symantec CDs purchased and/or sold by the Defendant bears a label

18  affixed to it purporting to be, and appearing to be, a genuine Symantec label but

19  which in fact is counterfeit.  Each of the counterfeit Symantec CDs bears artwork

20  purporting to identify it as a Symantec product.  Symantec will introduce testimony

21  and documentary evidence that the Defendant distributed and sold the counterfeit

22  Symantec products in California and that Symantec is headquartered in California.

23      **(9)    Plaintiff's Claim Number 9:**

24      Intentional interference with Plaintiff's prospective economic advantage.

25      **(A)    The Elements Required to Establish Symantec's Claim**

26              **Number 9:**

27      The elements of interference with prospective advantages are:  (1) the

28  existence of a prospective business relationship; (2) defendant's knowledge of the

1   existence of the relationship; (3) defendant's intentional conduct designed to disrupt

2   the relationship; (4) actual causation of damages; and (5) proximate causation of

3   damages. *Institute of Veterinary Pathology v. California Health Laboratories, Inc.*,

4   116 Cal. App. 3d 111 (1981); *Shamblin v. Berge*, 166 Cal. App. 3d 118, 122-123

5   (1985); *Buckaloo v. Johnson*, 14 Cal. 3d 815, 827 (1975); *Blank v. Kirwan*, 39 Cal.

6   3d 311(1985).

7                    **(B)     In Brief, the Key Evidence Symantec Relies on to Prove**

8                             **Claim Number 9:**

9             The key evidence is similar to the evidence for claim Number 7.  Symantec

10  will introduce testimony and documentary evidence that Symantec owns the

11  trademarks and copyrights in issue and that the Defendant distributed and sold

12  numerous counterfeit CDs recovered from various sources around the United States.

13  Symantec will introduce testimony and documentary evidence that Defendant

14  admitted that she purchased and sold numerous counterfeit CDs.  Symantec will

15  introduce testimony, physical and documentary evidence proving that the CDs the

16  Defendant purchased, marketed, distributed and sold are all counterfeits.  Symantec

17  will introduce documents establishing the Defendant purchased, marketed,

18  distributed and sold thousands of counterfeit Symantec CDs.  Each of the

19  counterfeit Symantec CDs purchased and/or sold by the Defendant includes

20  Symantec's trademarks and copyrighted materials owned by Symantec.  Each of the

21  counterfeit Symantec CDs purchased and/or sold by the Defendant bears a label

22  affixed to it purporting to be, and appearing to be, a genuine Symantec label but

23  which in fact is counterfeit.  Each of the counterfeit Symantec CDs bears artwork

24  purporting to identify it as a Symantec product.  Symantec will introduce testimony

25  and documentary evidence that the Defendant distributed and sold the counterfeit

26  Symantec products in California and that Symantec is headquartered in California.

27  Symantec will introduce testimony, physical and documentary evidence that

28  Symantec has been in the business of producing and distributing Norton and

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1   Symantec products for many years, that it has an existing customer base, and that

2   the Defendant induced consumers to purchase counterfeit CDs from the Defendant

3   instead of genuine CDs produced by, or authorized to be produced by, Symantec.

4   Symantec will introduce testimony and documentary evidence that the Defendant

5   participated in a scheme to mislead consumers into believing the counterfeit

6   products distributed and sold by the Defendant were genuine Symantec products.

7   **(10)   Plaintiff's Claim Number 10:**

8   Negligent interference with Plaintiff's prospective economic advantage.

9   **(A)   The Elements Required to Establish Symantec's Claim**

10  **Number 10:**

11  To establish this claim, Symantec must prove:

12  6)   That Symantec and a third party were in an economic relationship that

13       probably would have resulted in a future economic benefit to

14       Symantec;

15  7)   That defendants knew or should have known of this relationship;

16  8)   That defendants knew or should have known that this relationship

17       would be disrupted if they failed to act with reasonable care;

18  9)   That defendants failed to act with reasonable care;

19  10)  That defendants engaged in wrongful conduct;

20  11)  That the relationship was disrupted;

21  12)  That Symantec was harmed; and

22  13)  That defendants' wrongful conduct was a substantial factor in causing

23       Symantec's harm.

24  CACI No. 2204.  *Venhaus v. Shulty*, 155 Cal. App. 4th 1072, 1078 (2007).

25  **(B)   In Brief, the Key Evidence Symantec Relies on to Prove**

26  **Claim Number 10:**

27       The key evidence is similar to the evidence for claim Number 8.  Symantec

28  will introduce testimony and documentary evidence that Symantec owns the

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1  trademarks and copyrights in issue and that the Defendant distributed and sold

2  numerous counterfeit CDs recovered from various sources around the United States.

3  Symantec will introduce testimony and documentary evidence that Defendant

4  admitted that she purchased and sold numerous counterfeit CDs.  Symantec will

5  introduce testimony, physical and documentary evidence proving that the CDs the

6  Defendant purchased, marketed, distributed and sold are all counterfeits.  Symantec

7  will introduce documents establishing the Defendant purchased, marketed,

8  distributed and sold thousands of counterfeit Symantec CDs.  Each of the

9  counterfeit Symantec CDs purchased and/or sold by the Defendant includes

10  Symantec's trademarks and copyrighted materials owned by Symantec.  Each of the

11  counterfeit Symantec CDs purchased and/or sold by the Defendant bears a label

12  affixed to it purporting to be, and appearing to be, a genuine Symantec label but

13  which in fact is counterfeit.  Each of the counterfeit Symantec CDs bears artwork

14  purporting to identify it as a Symantec product.  Symantec will introduce testimony

15  and documentary evidence that the Defendant distributed and sold the counterfeit

16  Symantec products in California and that Symantec is headquartered in California.

17  Symantec will introduce testimony, physical and documentary evidence that

18  Symantec has been in the business of producing and distributing Norton and

19  Symantec products for many years, that it has an existing customer base, and that

20  the Defendant induced consumers to purchase counterfeit CDs from the Defendant

21  instead of genuine CDs produced by, or authorized to be produced by, Symantec.

22  Symantec will introduce testimony and documentary evidence that the Defendant

23  participated in a scheme to mislead consumers into believing the counterfeit

24  products distributed and sold by the Defendant were genuine Symantec products.

25  **B.    Defendant's Defenses**

26      Defendant has not clearly indicated which of her defenses she considers to be

27  viable and intends to pursue.

28  **C.    Key Evidentiary Issues.**

1  The most important evidentiary issue is whether defendant Nga Phan is
2  personally liable for willful infringement.

3  Another evidentiary issue is likely to be damages.  Symantec will likely seek
4  the maximum statutory damages under the Lanham Act, the Copyright Act and the
5  Trafficking in Counterfeit Labels Act (18 U.S.C.§ 2318).  Ms. Phan testified that
6  she was personally involved in both the selling and advertising of purported
7  Symantec products.  Personal liability is mandated against her under *Transgo*.

8  Symantec is likely to elect statutory damages.  The Defendant infringed the
9  following trademarks owned by Symantec: Symantec, the Symantec Logo, Norton
10 AntiVirus, LiveUpdate, Norton SystemWorks, Goback, CleanSweep, Norton Ghost
11 and Norton Utilities.  Symantec is entitled to statutory damages under 15 USCS
12 § 1117(c) (trademark infringement) and 17 USCS § 504(c) (copyright), if Symantec
13 elects the statutory damages remedies under federal copyright and/or trademark law.
14 Maximum statutory damages under 15 U.S.C. § 1117(c) would be as high as $4
15 million; maximum damages under the Copyright act would be as high as $150,000
16 per title, which in this case could total $600,000.

17 **D.   Key Issues of Law.**

18 The legal issues to some extent parallel the evidentiary issues discussed
19 above.  In addition, legal issues concerning the Defendant's willfulness and the
20 appropriate measures of damages will need to be addressed.

21 Symantec's core claims are that both Nga Phan and her corporation, Globe
22 2000 Corp., willfully infringed Symantec's copyrights and trademarks.  "Willful"
23 has been interpreted to mean "with knowledge that the defendant's conduct
24 constitutes copyright infringement." *Peer International Corp. v. Pausa Records,*
25 *Inc.*, 909 F.2d 1332, 1336 n.3  (9th Cir. 1990), quoting 3 M. Nimmer & D. Nimmer,
26 NIMMER ON COPYRIGHT § 14.04[B], at 14-40.2-.3 (1989).  "To refute evidence of
27 willful infringement, [a defendant] must not only establish its good faith belief in the
28 innocence of its conduct, it must also show that it was reasonable in holding such a

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1  belief." *Peer International Corp. v. Pausa Records, Inc., supra*, 909 F.2d 1332,

2  1336.  The defendants' knowledge and intent, together with the volume of

3  counterfeit CDs they sold, are sufficient to establish willfulness.  *See Philip Morris*

4  *U.S.A. Inc. v. Castworld Productions, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

5  The Defendant here seems to be claiming that she did not know she was

6  selling counterfeit products, so she is not liable for willful infringement.  In addition

7  to the evidence that she clearly knew she was selling counterfeit products, there is

8  strong evidence she was at least "willfully blind" to the fact that she was dealing in

9  counterfeits.  *See, e.g., Microsoft Corp. v. Compusource Distribs., Inc.*, 115 F.

10  Supp. 2d 800, 809 (E.D. Mich. 2000), in which the court noted that the defendants

11  received a cease and desist letter, but did nothing but telephone their two primary

12  software vendors, and continued to use those two vendors "without making any

13  attempt to investigate their assurances that they were distributing genuine Microsoft

14  software and hardware."  *Id.*  Here, too, the Defendant received a cease and desist

15  letter and continued to sell counterfeit products until Symantec sued.

16  Nga Phan's personal liability is inescapable under *Transgo, Inc. v. Ajac*

17  *Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985) (corporate officer

18  or director generally liable for all torts he authorizes or directs, or in which he

19  participates, even though acting as agent of corporation and not on his own).  Ms.

20  Phan authorized, directed and/or ratified all of the acts for which the corporate

21  defendant is liable.

22  The principal legal issues involving damages also parallel the evidentiary

23  issues discussed above.  Symantec will probably elect statutory damages under the

24  Lanham Act, the Copyright Act, and the anti-trafficking statute, 18 U.S.C. § 2318.

25  Symantec may recover the maximum statutory damages for ***both*** trademark

26  infringement ***and*** copyright infringement so long as the Defendant's actions violated

27  both federal acts.  *Nintendo of America v. Dragon Pacific International*, 43 F.3d

28  1007, 1011 (9th Cir. 1994) ("However, it is clear enough that, when a defendant

violates both the Copyright Act and the Lanham Act, an award of both types of damages is appropriate").  Similar analysis allows Symantec to recover statutory damages under 23 U.S.C. § 2318 in addition to the maximum statutory damages under the Lanham Act and the Copyright Act.

**E.   Bifurcation of Issues.**

Symantec does not request bifurcation.

**F.   Jury Trial.**

Symantec requested a jury trial in its complaint.  Symantec is entitled to a jury trial on each of its core claims.

**G.   Attorneys' Fees.**

Symantec is entitled to recover attorneys' fees under its Lanham Act claims. *See* 15 U.S.C. § 1117(b) ("the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee. . .").

**H.   Abandonment of Issues.**

Symantec is considering dropping its tortious interference claims in order to streamline the trial.

## III.   EXHIBITS

Pursuant to Local Rule 16.1f(2)(c), Plaintiff Symantec Corporation hereby sets for its list of exhibits:

| Symantec v. Nga Phan, et al. | | 07 CV 1402 JLS (BLM) | |
|---|---|---|---|
| **EXH. NO.:** | **DESCRIPTION** | **DATE MARKED** | **DATE ADMITTED** |
| 1. | November 2005 C&D Letter from Symantec to Defendants | | |
| 2. | Norton AntiVirus  discs labeled A2004-07-00029 (2 Discs ) | | |
| 3. | Documents from Richard Smith re discs labeled  A2004-07-00029 (2 Discs ) | | |
| 4. | Photomicrographs of Norton AntiVirus discs labeled  A2004-07-00029 (2 Discs ) | | |

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

| Symantec v. Nga Phan, et al. | | 07 CV 1402 JLS (BLM) | |
|---|---|---|---|
| **EXH. NO.:** | **DESCRIPTION** | **DATE MARKED** | **DATE ADMITTED** |
| 5. | Norton AntiVirus discs labeled A2004-07-00030 | | |
| 6. | Documents from Richard Smith re discs labeled A2004-07-00030 | | |
| 7. | Photomicrographs of Norton AntiVirus discs labeled A2004-07-00030 | | |
| 8. | Norton AntiVirus discs labeled A2004-08-00015 (2 Discs) | | |
| 9. | Documents from Brad Wagner re Norton AntiVirus discs labeled A2004-08-00015 (2 Discs) | | |
| 10. | Photomicrographs of Norton AntiVirus 2004 discs labeled A2004-08-00015 (2 Discs) | | |
| 11. | Norton AntiVirus disc labeled A2004-09-00058 | | |
| 12. | Documents from Don King re Norton AntiVirus disc labeled A2004-09-00058 | | |
| 13. | Photomicrographs of Norton AntiVirus disc labeled A2004-09-00058 | | |
| 14. | Norton Internet Security disc labeled A2004-10-00089 | | |
| 15. | Documents from Bruce Barkley re Norton Internet Security disc labeled A2004-10-00089 | | |
| 16. | Photomicrographs of Norton Internet Security disc labeled A2004-10-00089 | | |
| 17. | Norton Internet Security discs labeled A2005-05-00025 (2 Discs) | | |
| 18. | Documents from Jodie Pavey re Norton Internet Security discs labeled A2005-05-00025 (2 Discs) | | |
| 19. | Photomicrographs of Norton Internet Security discs labeled A2005-05-00025 (2 Discs) | | |
| 20. | Norton Internet Security disc labeled A2006-03-00023 (1 Disc) | | |

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

| Symantec v. Nga Phan, et al. | | 07 CV 1402 JLS (BLM) | |
|---|---|---|---|
| **EXH. NO.:** | **DESCRIPTION** | **DATE MARKED** | **DATE ADMITTED** |
| 21. | Documents from David Harris re Norton Internet Security disc labeled A2006-03-00023 (1 Disc) | | |
| 22. | Photomicrographs of Norton Internet Security disc labeled A2006-03-00023 (1 Disc) | | |
| 23. | Norton Internet Security discs labeled A2006-03-00063 (3 Discs) | | |
| 24. | Documents from Douglas A. Williams re Norton Internet Security discs labeled A2006-03-00063 (3 Discs) | | |
| 25. | Photomicrographs of Norton Internet Security discs labeled A2006-03-00063 (3 Discs) | | |
| 26. | Norton SystemWorks discs labeled A2006-04-00072 (1 disc) | | |
| 27. | Documents from William Wilson re Norton SystemWorks discs labeled A2006-04-00072 (1 disc) | | |
| 28. | Photomicrographs of Norton SystemWorks discs labeled A2006-04-00072 (1 disc) | | |
| 29. | Genuine Exemplar of Norton Internet Security | | |
| 30. | Photomicrographs of Genuine Exemplar of Norton Internet Security | | |
| 31. | Genuine Exemplar of Norton AntiVirus | | |
| 32. | Photomicrographs of Genuine Exemplar of Norton AntiVirus | | |
| 33. | Genuine Exemplar of Norton SystemWorks | | |
| 34. | Photomicrographs of Genuine Exemplar of Norton SystemWorks | | |
| 35. | Robert Freedman Expert Report | | |
| 36. | IRMA Anti-Piracy Compliance Program, Standards & Procedures, Version 4.2 (2004) | | |
| 37. | IFPI's SID Code Implementation Guide | | |
| 38. | W. Scott Mowrey Jr., Expert Report | | |

| EXH. NO.: | DESCRIPTION | DATE MARKED | DATE ADMITTED |
|---|---|---|---|
| | **Symantec v. Nga Phan, et al.** | | **07 CV 1402 JLS (BLM)** |
| 39. | Symantec trademark certificates for:<br><br>a. "Symantec", registration number 1683688.<br><br>b. "Norton SystemWorks", registration number 2488092.<br><br>c. "Norton AntiVirus", registration number 1758084.<br><br>d. "Ghost", registration number 1107115.<br><br>e. "Norton Utilities", registration number 1508960.<br><br>f. "CleanSweep", registration number 1936913.<br><br>g. "LiveUpdate", registration number 2243057.<br><br>h. "pcAnywhere", registration number 1781148<br><br>I. "GoBack", registration number 2271088<br><br>j. "WinFax", registration 3182978<br><br>k. Symantec Logo, registration number 3009890 | | |
| 40. | Symantec copyright registrations for:<br><br>a. Norton AntiVirus<br><br>b. Norton Internet Security<br><br>c. Norton Utilities<br><br>d. Norton Ghost<br><br>e. CleanSweep<br><br>f. pcAnywhere | | |
| 41. | Pages from Defendants' Website and Price List | | |
| 42. | Deposition of Nga Phan | | |

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

| | Symantec v. Nga Phan, et al. | | 07 CV 1402 JLS (BLM) | |
|---|---|---|---|---|
| **EXH. NO.:** | **DESCRIPTION** | | **DATE MARKED** | **DATE ADMITTED** |
| 43. | Symantec Corporation's  2007 10-K | | | |
| 44. | Defendant Nga Phan's Responses to Special Interrogatories | | | |
| 45. | Defendant Globe 2000 Corp.'s Responses to Special Interrogatories | | | |
| 46. | Defendant Nga Phan's Responses to Document Requests | | | |
| 47. | Defendant Globe 2000 Corp.'s Responses to Document Requests | | | |
| 48. | Symantec's Complaint | | | |
| 49. | Defendants' Answer to Symantec's Complaint | | | |
| 50. | Nga Phan Deposition Transcript | | | |
| 51. | Defendant's Sales Invoices | | | |
| 52. | Defendant's Purchase Invoices | | | |
| 53. | Intentionally Left Blank | | | |
| 54. | Intentionally Left Blank | | | |
| 55. | Intentionally Left Blank | | | |

## IV.  WITNESSES

Pursuant to Rule 26(a)(3) of the Federal Rules of Civil Procedure and Local Rule 16.1f(2)(d), Plaintiff Symantec Corporation disclose the following witnesses whom it intends to call in its case in chief, excluding witnesses offered for rebuttal or impeachment.  Some of the witnesses so designated were employed by Symantec but are no longer employees, and as such Symantec cannot compel their attendance at trial.

1.    **David Majors**, Symantec Corporation, 20330 Stevens Creek Boulevard, Cupertino, CA  95014.  Telephone: 408-517-8000.

2.    **Camilla Herron**, Symantec Corporation, 20330 Stevens Creek Boulevard, Cupertino, CA  95014.  Telephone: 408-517-8000.

1    3.    **Jerry Jones**, of Symantec Corporation, 20330 Stevens Creek

2    Boulevard, Cupertino, CA  95014.  Telephone: 408-517-8000.

3    4.    **Marc Brandon**, of Symantec Corporation, 20330 Stevens Creek

4    Boulevard, Cupertino, CA  95014.  Telephone: 408-517-8000.

5    5.    **Chris Blackletter**, formerly of Symantec Corporation.

6    6.    **Chansonette Connolly**, formerly of Symantec Corporation.

7    7.    **Jodie Pavey**, Sami Investigations, Inc., Oregon City, Oregon.  Ms.

8    Pavey may testify at trial if the need arises.  Ms. Pavey will be able to testify

9    concerning a test purchases she conducted from the defendants.

10   8.    **Robert Freedman**.  **Expert Witness**. 1140 Lindblade Street, Culver

11   City, CA 90230.  (310) 838-4052.  Mr. Freedman is expected to testify at trial.

12   Mr. Freedman is expected to testify as to the CD manufacturing process,

13   methodology for determining whether a CD is genuine or counterfeit and expert

14   opinion testimony as to the counterfeit nature of the disks obtained from the

15   defendants.  Mr. Freedman has over 25 years of experience in the manufacturing

16   and distribution of computer content on floppy disks, computer tapes, CDs and

17   DVDs.   Mr. Freedman has worked extensively with the Recording Industry

18   Association of America ("RIAA") on anti-piracy matters as they relate to CD-Audio

19   and has trained numerous investigators for the RIAA, Motion Picture Association of

20   America, Los Angeles Sheriff's Department, and Los Angeles Police Department in

21   the manufacturing processes utilized in the manufacturing of CDs and DVDs, and in

22   the identification of counterfeit product.

23   9.    **William Scott Mowrey, Jr**.  **Expert Witness.** 15303 Ventura

24   Boulevard

25   Suite 1150, Sherman Oaks, CA  91403.  (818) 986-5070.  Mr. Mowrey is expected

26   to testify at trial.  He will testify as to issues of damages.  Mr. Mowrey is a Certified

27   Public Accountant, licensed in the state of California, and a founding partner of the

28   firm of Cohen, Miskei & Mowrey LLP, which specializes in forensic accounting,

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1    litigation consulting and business valuation services.

2        10.    **Eric Munson**, Baute & Tidus, LLP, 777 S. Figueroa St., Los Angeles,

3    CA 90017.  (213) 630-5000.

4        11.    **Nga Phan**, Defendant.

5        12.    **Thai Tran**, 3955 Golf Drive, San Jose, California 95127.

6        13.    **Tim Tran**, 3954 Golf Drive, San Jose, California 95127.

7        14.    **Richard Smith**, 537 W. 14th St., Traverse City, MI 49684.  (231) 933-

8    9910.

9        15.    **Brad Wagner**, 569 North Main Street, Kalispell, MT 59901.  (406)

10   257-0798.

11       16.    **Don King**, 2933 Alcoa Hwy., Knoxville, TN 37920.  (865) 579-1354.

12       17.    **Bruce Barkley**, 705 W. Windsor, Phoenix, AZ.

13       18.    **Douglas Williams**.  889-C Woodville Road, Apt. 27, Mansfield, OH

14   44907.  (419) 525-2433.

15       19.    **David Harris**, 1000 Pittsford Victor Road, Pittsford, NY 14534.

16   (585) 387-8793.

17   ///

18

19       20.    **William D. Wilson**, 1315 Oak Hill Drive, Colorado Springs, CO

20   80919.  (719) 260-1324.

21   Dated: November 10, 2008                    BAUTE & TIDUS LLP

22

23

24                                         By:    _s / Henry H. Gonzalez_____
                                                       Mark D. Baute
25                                                  Henry H. Gonzalez
                                                  Attorneys for Plaintiff
26                                             SYMANTEC CORPORATION

27

28

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

      I am employed in the aforesaid County, State of California; I am over the age

4

of 18 years and not a party to the within action; my business address is

5

  **✔**          BAUTE & TIDUS, LLP

6

777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017

7

Tel: (213) 630-5000

8

\_\_\_\_          ACE MESSENGER AND ATTORNEY SERVICE, INC.
811 Wilshire Boulevard, Suite 900

9

Los Angeles, CA 90017
Tel: (213) 623-3979

10

11

      I served the following listed documents on the interested parties in this action

12

as follows:

13

SYMANTEC v. GLOBE 2000 CORPORATION, et al.
Case No.    07 CV 1402 JLS (BLM)

14

[1740.39 ]

15

**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

16

\_\_\_\_    By Personal Service I caused such envelope to be delivered by hand to the
interested party as listed below.

17

\_\_\_\_    By Facsimile to the names and fax numbers listed below.

18

\_\_\_\_    By Federal Express ~ Next Business Day Delivery: by placing a true copy

19

thereof in a sealed envelope(s) and addressed to the parties listed below.

20

\_\_\_\_    By Mail: by placing a true copy thereof in a sealed envelope and addressed to
the parties listed below.  I placed such envelope(s) for deposit in the U.S.

21

Mail for service by the United States Postal Service, with postage thereon
fully prepaid.

22

I am "readily familiar" with this firm's practice of collection and processing

23

correspondence for mailing.  Under that practice, it would be deposited with
the U.S. Postal Service on that same day with postage thereon fully prepaid at

24

Los Angeles, California, in the ordinary course of business.  I am aware that,
on motion of the party served, service is presumed invalid if postal

25

cancellation date or postage meter date is more than one day after the date of
deposit for mailing in affidavit.

26

27

  **✔**     Filed and served electronically in accordance with the Court's electronic
filing ("ECF") rules, pursuant to which registered ECF users receive service

28

copies by e-mail delivery.  A courtesy copy will follow by U.S. Mail.

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000

1

2  ____  By E-Mail: I caused the above-referenced document(s) to be e-mailed to the parties listed below, as noted.

3

4

5  Steven A. Dillick, Esq.                    *Attorneys for Defendants*
   LAW OFFICES OF STEVEN DILLICK              *GLOBE 2000 CORP., and*
6  1910 Market Street, Suite 1910             *NGA PHAN*
   San Francisco, CA 94105
7        Tel:   (415) 399-8777
         Fax:  (415) 399-8778
8
   [Rev. November 4, 2008]
9

10  ☐     (STATE) I declare under penalty of perjury under the laws of the State of
11  California that the foregoing is true and correct.

12  ☒     (FEDERAL)  I hereby certify that I am employed in the office of a member of
13  the Bar of this Court at whose direction the service was made, and I certify under
    penalty of perjury that the foregoing is true and correct.

14  ☐     (FEDERAL - ATTORNEY)  I hereby certify that I am a member of the Bar
15  of the United States District Court, **Central District** of California, and I certify
    under penalty of perjury that the foregoing is true and correct.

16

17        Executed on   November 10, 2008   at Los Angeles, California.

18

19  KIRSTEN DeVERE_____          **s / Kirsten DeVere**_____
    *print name*                        *signature*

20

21

22

23

24

25

26

27

28

BAUTE & TIDUS LLP
777 SOUTH FIGUEROA STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90017
(213) 630-5000